IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:01-CV-902-BR(3)

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION,<br>　　　　Plaintiff,<br><br>v.<br><br>AMA TOURS UNLIMITED, INC.; ALPHONSO HAIGLER; DAROL WAYNE BRITT; THE CUMBERLAND COUNTY BOARD OF EDUCATION; UTICA MUTUAL INSURANCE CO.; PATRICIA MATHIS, a Minor, through her Guardian *Ad Litem*, REBECCA HARMON; REBECCA HARMON; WILLIAM HARMON; DAVID THOMAS, a Minor, through his Guardian *Ad Litem* KEITH THOMAS; KEITH THOMAS; CHERYL THOMAS; BRENT NARA, a Minor, through his Guardian *Ad Litem* SALLY McKINNEY; TOM McKINNEY; SALLY McKINNEY; DOUGLAS GALLOP, a Minor, through his Guardian *Ad Litem* STEVEN GALLOP; STEVEN GALLOP; HUI SUN GALLOP; JILLIAN R. HERNANDEZ-ADAMS, a Minor, through her Guardian *Ad Litem* OWEN COOK; CARLA HERNANDEZ-ADAMS; and LT. COL. MIKE ADAMS;<br>　　　　Defendants. | FILED<br>NOV 15 2001<br>DAVID W. DANIEL, CLERK<br>US DISTRICT COURT, EDNC<br>BY _____ DEP. CLERK |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND OTHER APPROPRIATE RELIEF

Plaintiff Westport Insurance Corporation ["Westport"], through undersigned counsel, asserts the following claims:

I. **BACKGROUND**

A. **The Parties.**

1. Westport is a corporation organized under Missouri law. Its principal place of business is in Overland Park, Kansas, and it is engaged in business as an insurance carrier. Westport issued one of the insurance policies at issue in this action.

2. Upon information and belief, defendant AMA Tours Unlimited, Inc. ["AMA"] is a corporation organized under North Carolina law, with its principal place of business in Cumberland County, North Carolina. AMA is engaged in the business of operating commercial passenger buses for hire.

3. Upon information and belief, defendant Alphonso Haigler ["Haigler"] is a citizen and resident of Cumberland County, North Carolina. Upon information and belief, defendant Haigler is a controlling shareholder, officer and director of AMA.

4. Upon information and belief, defendant Darol Wayne Britt is a citizen and resident of Cumberland County, North Carolina.

5. Defendant Cumberland County Board of Education ["the School Board"] is a local School Board created under North Carolina law.

6. Defendant Utica Mutual Insurance Company ["Utica"] is a corporation organized under New York law, with its principal place of business in New Hartford, New York. Utica is engaged in business as an insurance carrier, and it issued one of the insurance policies at issue in this action.

7. Upon information and belief, defendant Patricia Mathis is a minor and resident of Cumberland County, North Carolina.

8. Upon information and belief, defendant Rebecca Harmon is a citizen and resident of Cumberland County, North Carolina and is the guardian *ad litem* for defendant Patricia Mathis.

9. Upon information and belief, defendant David Thomas is a minor and resident of Cumberland County, North Carolina.

10. Upon information and belief, defendant Keith Thomas is a citizen and resident of Cumberland County, North Carolina and is the guardian *ad litem* for defendant David Thomas.

11. Upon information and belief, defendant Cheryl Thomas is a citizen and resident of Cumberland County, North Carolina.

12. Upon information and belief, defendant Brent Nara is a minor and resident of Cumberland County, North Carolina.

13. Upon information and belief, Sally McKinney is a citizen and resident of Cumberland County, North Carolina and is the guardian *ad litem* for defendant Brent Nara.

14. Upon information and belief, defendant Tom McKinney is a citizen and resident of Cumberland County, North Carolina.

15. Upon information and belief, defendant Douglas Gallop is a minor and resident of Cumberland County, North Carolina.

16. Upon information and belief, defendant Steven Gallop is a citizen and resident of Cumberland County, North Carolina, and is the guardian *ad litem* for defendant Douglas Gallop.

17. Upon information and belief, defendant Hui Sun Gallop is a citizen and resident of Cumberland County, North Carolina.

18. Upon information and belief, defendant Jillian R. Hernandez-Adams is a minor and resident of Cumberland County, North Carolina.

19. Upon information and belief, defendant Owen Cook is a citizen and resident of Cumberland County, North Carolina, and is the guardian *ad litem* for defendant Jillian R. Hernandez-Adams.

20. Upon information and belief, defendant Carla Hernandez-Adams is a citizen and resident of Cumberland County, North Carolina.

21. Upon information and belief, defendant Lt. Col. Mike Adams is a citizen and resident of Cumberland County, North Carolina.

**B.     Jurisdiction And Venue.**

22. This court has subject matter jurisdiction over this action pursuant to the federal question jurisdiction conferred by 28 U.S.C. § 1331. The case raises questions about the rights and obligations among the parties under 49 U.S.C. § 13906 and certain insurance endorsements issued pursuant to that statute and related federal regulations, and the court has pendent, ancillary or supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims asserted herein.

23. This court also has subject matter jurisdiction over this case under the diversity jurisdiction conferred by 28 U.S.C. § 1332. The defendants are all citizens of states other than the states in which Westport is a citizen; and, upon information and belief, the amount in controversy exceeds $75,000, exclusive of interest and costs.

24. Venue in this district is appropriate under 28 U.S.C. § 1391 because (i) a substantial part of the acts or omissions giving rise to the claims at issue occurred in this district, and (ii) the defendants reside in this district within the meaning of 28 U.S.C. § 1391.

## C.  The Insurance Policies.

### 1.  The Westport Policy.

25.  AMA Tours was the named insured under a policy of insurance issued by Westport designated as Policy No. FIU100049-1 ["the Westport Policy"] with a policy period of June 15, 2000 to June 15, 2001, as more fully set forth in the Policy.

26.  The Westport Policy provided commercial automobile liability coverage to AMA Tours and certain other persons meeting the definition of "insured" set forth in the policy. That automobile liability coverage was subject to the terms, conditions and limitations set forth in the Westport Policy.

27.  The "Business Auto Coverage Part Declarations" of the Westport Policy expressly state:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from the **COVERED AUTO** section of the Business Coverage Form next to the name of the coverage.

The columns following this statement reflect that the Westport Policy provides liability coverage for covered autos as defined in "Symbol 7" of the COVERED AUTO Section of the Business Coverage Auto Form.

28.  The Business Coverage Auto Form of the Westport Policy provides that "Symbol 7" coverage is limited to

> [o]nly those "autos" described in Item Three of the Declarations for which a premium charge is shown . . ..

29.  Item 3 of the Declarations identifies four covered vehicles by year, model, trade name and vehicle identification number. By virtue of the policy provisions summarized above,

the Westport Policy did not cover any vehicles other than the four so identified. None of those four vehicles was involved in the accident to which this case relates.

30. Pursuant to 49 U.S.C. § 13906 and related federal regulations, the Westport Policy also included a Form MCS-90B, known as "Endorsement for Motor Carrier Policies of Insurance for Public Liability under Section 18 of the Best Regulatory Reform Act of 1982." The MCS-90B Endorsement, in pertinent part, provides:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a for-hire motor carrier of passengers with Section 18 of the Bus Regulatory Reform Act of 1982 and the rules and regulations of the Federal Highway Administration's Bureau of Motor Carriers Safety (Bureau) and the Interstate Commerce Commission (ICC).
>
> .... [T]he insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached, shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

-6-
Case 5:01-cv-00902-BR   Document 1   Filed 11/15/01   Page 6 of 17

31. The MCS-90B Endorsement provides that Westport shall not be liable for amounts in excess of $5 Million for each accident.

32. As reflected by its terms, the MCS-90B Endorsement was intended for the protection of the public, and not for the protection of the insureds under the policy. To the contrary, MCS-90B Endorsement requires the insureds to reimburse Westport for any amount paid under the endorsement.

**2. The Utica Policy.**

33. Upon information and belief, the School Board is the named insured under a commercial auto policy issued by Utica and designated as Policy No. BAC0822303984 2 with a policy term from July 1, 2000 to July 1, 2001 ["the Utica Policy"].

34. Despite repeated requests to Utica, Westport has been unable to obtain a copy of the Utica Policy. Accordingly, the allegations about the Utica Policy that follow are based on information and belief derived from incomplete information provided by Utica about the Policy.

35. Upon information and belief, the Utica Policy provided commercial automobile liability coverage to the School Board and certain other persons meeting the definition of "insured" as set forth in the policy. Upon information and belief, the Utica Policy provides the School Board and other insureds with "Symbol 1" coverage, under which coverage is extended to "any 'auto.'" Accordingly, coverage under the Utica Policy is not limited to vehicles listed in the declarations of that policy.

36. Upon information and belief, the Utica Policy also contained a Form MCS-90, which provides protection for the public on terms substantially similar to those of the MCS-90B Endorsement that is attached to the Westport Policy. The MCS-90 Endorsement, like the MCS-90B Endorsement, is issued pursuant to federal statute.

-7-
Case 5:01-cv-00902-BR    Document 1    Filed 11/15/01    Page 7 of 17

37. Under N.C. Gen. Stat. § 115C-42, the Board of Education, by securing liability insurance through the Utica Policy, has waived its governmental immunity from liability for damage by reason of death or injury to persons or property caused by the negligence or tort of any agent or employee of the Board of Education acting within the scope of his authority or within the course of his employment.

**D. Events Allegedly Giving Rise To The Underlying Claims.**

**1. The Bus Contracts.**

38. Upon information and belief, in or about February, 2001, the School Board entered into a contract with AMA to hire two commercial passenger buses to transport students who were members of the Massey Hill Classical High School Band (and related persons) to a school-sponsored and supported band activity that was to take place in Florida. The trip was scheduled to commence on April 6, 2001.

39. Upon information and belief, AMA did not have two of its own buses available to fulfill the contract at the scheduled commencement of the Florida trip. Three of the four buses owned by AMA and insured under the Westport Policy were already committed to other customers, leaving only one available to fulfill the contract with the School Board.

40. Upon information and belief, to fulfill its obligations under the contract with the School Board, AMA entered into a subcontract with Darol Britt on or prior to April 6, 2001. Under that subcontract, AMA hired a 1990 LAG commercial passenger bus owned by defendant Britt (or some related entity) and arranged for Mr. Britt to drive that bus as the second bus required under the contract with the School Board.

41. The 1990 LAG commercial passenger bus that AMA hired from Mr. Britt ["the Britt Bus"] was not listed as an insured or covered vehicle under the Westport Policy. As a consequence, that bus was never an insured covered vehicle under the policy because, as set

- 8 -
Case 5:01-cv-00902-BR   Document 1   Filed 11/15/01   Page 8 of 17

forth above, coverage of that policy was limited to specifically listed vehicles. Upon information and belief, the Utica Policy does not contain a similar limitation.

42.  Defendant Britt was not named as an insured in the Westport Policy, and he in fact was not an insured under that policy.

43.  Westport has been unable to ascertain the existence of any automobile liability insurance maintained by Defendant Britt with respect to the Britt Bus.

**2.  The Accident.**

44.  Upon information and belief, the Massey Hill Classical High School Band and related persons left Cumberland County for the trip to Florida on April 6, 2001. Part of the group was in the Britt Bus. The remainder of the group was in a bus that was owned by AMA and listed as an insured vehicle under the Westport Policy ["the AMA Bus".]

45.  Upon information and belief, the minor defendants, Patricia Mathis, David Thomas, Brent Nara, Douglas Gallop, Jillian R. Hernandez-Adams [hereinafter sometimes referred to collectively as the "Minor Defendants"], were among the members of the Massey Hill Classical High School Band who were aboard the Britt Bus.

46.  Upon information and belief, the Britt Bus was engaged in a serious automobile accident on U.S. Interstate Route 95, Camden County, Georgia, on or about April 6, 2001, at about 6:40 a.m. The AMA Bus under the Westport Policy was not involved in this accident.

47.  Upon information and belief, the Minor Defendants were aboard the Britt Bus at the time of the accident, and they were injured in the accident.

**3.  The Personal Injury Lawsuits.**

48.  Upon information and belief, five lawsuits have been filed in the General Court of Justice, Superior Court Division, of Cumberland County, North Carolina, seeking recovery for damages allegedly suffered in the accident involving the Britt Bus. Four of those lawsuits seek

recovery against defendants AMA, Haigler, Britt and School Board, and one of the lawsuits seeks recovery against defendants AMA, Haigler and Britt only. These five lawsuits are more specifically identified in Paragraphs 49 through 53 of this Complaint. The remainder of this Complaint refers to the five lawsuits collectively as "the Cumberland Court Personal Injury Lawsuits."

49. One of the Cumberland County Personal Injury Lawsuits is captioned as *David Thomas, a minor, by and through his Guardian Ad Litem, Keith Thomas; and Keith and Cheryl Thomas, Individually v. Darol Wayne Britt, et al.* and is designated as File No. 01 CVS 4987 in the Office of the Clerk of Cumberland County Superior Court ["the Thomas Personal Injury Lawsuit"].

50. The second Cumberland County Personal Injury Lawsuit is captioned as *Patricia Mathis, a minor, by and through her Guardian Ad Litem, Rebecca Harmon; and Rebecca and William Harmon, Individually v. Darol Wayne Britt, et al.* and is designated as File No. 01 CVS 4988 in the Office of the Clerk of Cumberland County Superior Court ["the Mathis Personal Injury Lawsuit"].

51. The third Cumberland County Personal Injury Lawsuit is captioned as *Brent Nara, a minor, by and Through his Guardian Ad Litem, Sally McKinney; and Tom and Sally McKinney, Individually v. Darol Wayne Britt, et al.* and is designated as File No. 01 CVS 6986 in the Office of the Clerk of Cumberland County Superior Court ["the Nara Personal Injury Lawsuit"].

52. The fourth Cumberland County Personal Injury Lawsuit is captioned as *Douglas Gallop, a minor, by and Through his Guardian Ad Litem, Steven Gallop; and Steven and Hui Sun Gallop, Individually v. Darol Wayne Britt, et al.* and designated as File No. 01 CVS 6776 in

the Office of the Clerk of Cumberland County Superior Court ["the Gallop Personal Injury Lawsuit"].

53. The fifth Cumberland County Personal Injury Lawsuit is captioned as *Owen Cook, Guardian Ad Litem for Jillian R. Hernandez-Adams, a Minor; Carla Hernandez-Adams, and Lt. Col. Mike Adams v. Darol Wayne Britt, et al.* and is designated as File No. 01 CVS 5505 in the Office of the Clerk of Cumberland County Superior Court ["the Hernandez-Adams Personal Injury Lawsuit"].

E. **The Necessity For This Lawsuit.**

54. As set forth below, various disputes, controversies and uncertainties have arisen among some or all of the parties with respect to the application of the Westport and Utica policies to the Cumberland County Personal Injury Lawsuits and the rights and obligations of the parties under the Westport and Utica policies with respect to the claims asserted in those lawsuits. Such disputes, controversies and uncertainties may hereafter extend to claims by any other persons that may have been injured by the accident involving the Britt Bus. Such disputes, controversies, and uncertainties constitute actual, real and existing controversies within the meaning of 28 U.S.C. § 2201.

55. In order to obtain a timely resolution of such controversies, disputes and uncertainties, Westport has filed this action seeking declaratory and other appropriate relief.

## II. CLAIMS FOR RELIEF.

A. **First Claim For Relief (Darol Britt Not Insured Under Westport Policy).**

56. The foregoing allegations of Paragraphs 1 through 55 are incorporated herein by reference.

57. Westport believes that defendant Britt is not an insured under the Westport Policy. Defendant Britt is not identified in the Westport Policy as an insured, and he does not

fall within the definition of insured under the basic Westport Policy. Westport also does not believe that Britt is an insured within the meaning of the limited additional protection for members of the public created under the MCS-90B Endorsement.

58. Upon information and belief, one or more of the defendants may dispute whether and to what extent Britt is an insured under the Westport Policy or the MCS-90B Endorsement to that Policy.

59. Westport is entitled to a judgment declaring that Britt is not an insured under the Westport Policy or the MCS-90B Endorsement to that Policy and that Westport has no duty under the Westport Policy, the MCS-90B Endorsement, 49 U.S.C. § 13906 or related federal regulations to pay any judgment that may be recovered against Britt in the Cumberland County Personal Injury Lawsuits or in any other action that may hereafter be commenced in connection with the accident described above.

**B. Second Claim For Relief (No Duty Of Defense).**

60. The allegations of Paragraphs 1 through 59 are incorporated herein by reference.

61. The Westport Policy does not provide indemnity coverage with respect to the Cumberland County Personal Injury Lawsuits for any person who is named as a defendant in those actions. The only obligation of Westport Policy with respect to claims arising from the above-described accident is the limited obligation to members of the public under the MCS-90B Endorsement, subject to right of reimbursement from the insured, to pay certain judgments if they are entered against the insured in favor of such members of the public.

62. Under a proper construction of the Westport Policy and applicable provisions of federal law, the duty of defense provided by the basic Westport Policy for covered liability claims does not extend to claims that are covered, if at all, solely by virtue of the MCS-90B

-12-

Endorsement. Accordingly, Westport has no obligation to provide a defense to any of the defendants in the Cumberland County Personal Injury Lawsuits.

63. Upon information and belief, one or more of the defendants may contend that Westport has a duty to provide indemnity for or a defense to claims asserted in the Cumberland County Personal Injury Lawsuits.

64. Westport is entitled to judgment declaring (i) that it has no duty to provide a defense to any defendant in the Cumberland County Personal Injury Lawsuits, (ii) that, to the extent that Westport provides a defense to any defendant under reservation of rights, it is entitled, at its election, to cease paying for such defense, and (iii) that Westport has no duty to indemnify any defendant in the Cumberland County Personal Injury Lawsuits, its sole obligation, if any, being a limited obligation to members of the public under the MCS-90B Endorsement to pay (subject to right of reimbursement) certain judgments.

C. **Third Claim For Relief (Utica's Primary Obligation With Respect To Claims Against School Board).**

65. The foregoing allegations of Paragraphs 1 through 64 are incorporated herein by reference.

66. Upon information and belief, the Utica Policy provides coverage to the School Board for the claims asserted in the Thomas, Mathis, Nara and Gallop Personal Injury Lawsuits. Upon information and belief, Utica's coverage for the claims against the School Board arises under the basic provisions of the Utica Policy and would exist even if the Utica Policy did not have a MCS-90 Endorsement.

67. Upon Information and belief, Utica is obligated under the Utica Policy to provide a defense to the School Board for the claims asserted in the Thomas, Mathis, Nara and Gallop Personal Injury Lawsuits.

68. Upon information and belief, if any judgment is entered against the School Board in the Thomas, Mathis, Nara and Gallop Personal Injury Lawsuits, then primary responsibility for paying such judgment (subject to any applicable deductibles and policy limits) rests on Utica, and Westport would be obligated to pay such judgment, if at all, only to the extent that it (i) is not covered by the Utica Policy and (ii) falls within the protection of the MCS-90 B Endorsement under applicable federal law.

69. Upon information and belief, Utica (or one or more of the other defendants) may dispute the interpretation of Utica's obligations set forth in Paragraphs 35 through 36.

70. Westport is entitled to judgment declaring that it is Utica's obligation, not Westport's obligation, to defend and indemnify the School Board for any claims asserted in the Thomas, Mathis, Nara and Gallop Personal Injury Lawsuits and for any claims by Westport for reimbursement for judgments paid under the Westport MCS-90B Endorsement. Westport is further entitled to judgment declaring that it has no duty to pay any judgments entered against the School Board in the Thomas, Mathis, Nara and Gallop Personal Injury Lawsuits except to the extent, if any, that such judgments (i) are not covered by or exceed the coverage of the Utica Policy and (ii) fall within the scope of the MCS-90B Endorsement to the Westport Policy.

### D. Fourth Claim For Relief (Utica's Obligation With Respect To Claims Against AMA and Britt.

71. The foregoing allegations of Paragraphs 1 though 70 are incorporated herein by reference.

72. Upon information and belief, Utica's defense and indemnity obligations with respect to Britt, Haigler and /or AMA is substantially similar to its obligations with respect to the School Board, as set forth in Paragraphs 35 through 36 above to the extent, if any, that Britt, Haigler and/or AMA are insureds under the Utica Policy. In that event, Utica, rather than

Westport, would have the primary obligation to pay any judgments entered against such defendants in the Cumberland County Personal Injury Lawsuits.

73. Upon information and belief, Utica may dispute its obligations as set forth in Paragraphs 35 through 36 above.

74. Westport is entitled to judgment declaring the extent, if any, to which Utica has an obligation to defend or indemnify claims against Britt, Haigler and/or AMA in the Cumberland County Personal Injury Lawsuits.

E. **Fifth Claim for Relief (Claim For Reimbursement).**

75. The foregoing allegations of Paragraphs 1 through 74 are incorporated herein by reference. To the extent, if any, that AMA, Haigler, Britt and the School Board are insureds under the MCS-90B Endorsement to the Westport Policy, they are obligated under the Endorsement and applicable federal law to reimburse Westport for any amounts that Westport must pay to the plaintiffs in the Cumberland County Adams Personal Injury Lawsuits by virtue of judgments entered in those actions.

76. One or more of such defendants may dispute their obligation to reimburse Westport for amounts paid on any judgment.

77. If final judgment is entered in this action prior to entry and/or payment of any judgment in the Cumberland County Personal Injury Lawsuits, then Westport is entitled to a judgment declaring that defendants Britt, AMA, and/or the School Board are obligated to reimburse Westport for any amounts it must pay on judgments in the Cumberland County Personal Injury Lawsuits.

78. If Westport has paid any judgments in the Thomas or Mathis Personal Injury Lawsuits prior to resolution of this case, then Westport is entitled to judgment against AMA, Haigler, Britt and/or for the School Board for any amounts paid on such judgment.

- 15 -
Case 5:01-cv-00902-BR   Document 1   Filed 11/15/01   Page 15 of 17

WHEREFORE plaintiff Westport Insurance Corporation respectfully requests the following relief:

1. Judgment declaring the rights and obligations of the parties as follows:

   a. Judgment declaring that Darol Britt is not an insured under the Westport Policy.

   b. Judgment declaring that Westport does not have an obligation under the Westport Policy to provide indemnity or a defense to any defendant in the Cumberland County Personal Injury Lawsuits.

   c. Judgment declaring that Utica has primary responsibility for paying any judgment entered against the School Board and that Utica is obligated to reimburse Westport for any amount that Westport must pay under the MCS-90B Endorsement with respect to any judgment against the School Board.

   d. Judgment declaring whether Britt, Haigler and/or AMA are insureds under the Utica Policy and if so, declaring that Utica has primary responsibility for paying any judgment entered against those defendants and that Utica is obligated to reimburse Westport for any amount that Westport may pay under the MCS-90B Endorsement with respect to any judgment entered against such defendants to the extent that they are insureds under the Utica Policy.

   e. Judgment declaring that AMA, Haigler, Britt and/or the School Board are obligated to reimburse Westport for any amounts that Westport must pay to the plaintiffs in the Cumberland County Personal Injury Lawsuits by virtue of judgments entered in those actions.

2. Judgment against AMA, Britt and/or the School Board (as may be appropriate) for any amounts paid by Westport on any judgment entered against any of those parties in the Cumberland County Personal Injury Lawsuits.

3. Judgment taxing against some party other than Westport the costs of this action, including Westport's reasonable attorneys' fees and other litigation expenses, to the extent, if any, permitted by applicable law.

4. For such other and further relief in favor of Westport as the court deems proper.

This the 15th day of November, 2001.

*[signature: Kristen Lingo]*

Michael T. Medford, NCSB # 7227
Kristen G. Lingo, NCSB # 19938
MANNING, FULTON & SKINNER, P.A.
Attorneys for Plaintiffs
3605 Glenwood Avenue – Suite 500
Post Office Box 20389
Raleigh, North Carolina 27619-0389
Telephone:   (919) 787-8880
Facsimile:   (919) 787-8902

297348-1/MTM/JAA/00387-L29902